ORAL ARGUMENT NOT YET SCHEDULED
NO. 22-1142

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

GRAYSCALE INVESTMENTS, LLC,
Petitioner,

v.

SECURITIES AND EXCHANGE COMMISSION,
Respondent.

---

On Petition for Review of an Order of the
United States Securities and Exchange Commission's
June 29, 2022 Final Order

---

**BRIEF OF INVESTOR CHOICE ADVOCATES NETWORK, JAMES J. ANGEL, BRIAN BROOKS, HASHEM DEZHBAKHSH, CAROL GOFORTH, JOSEPH A. GRUNDFEST, CAMPBELL R. HARVEY, NARASIMHAN JEGADEESH, DAVID NOBLE, HARVEY PITT, BRIAN QUINTENZ, JUAN RUBIO-RAMIREZ, MARK WETJEN, AND ROBERT E. WHALEY AS *AMICI CURIAE* IN SUPPORT OF PETITIONER**

---

PAUL HASTINGS LLP
STEPHEN B. KINNAIRD
(SB 454271)
2050 M Street NW
Washington, D.C., 20036
Telephone: 1(202) 551-1700
Facsimile: 1(202) 551-0242

*Attorneys for Amici Curiae*

PAUL HASTINGS LLP
NICOLAS MORGAN (989861)
ERIC SIBBITT* (CA 192413)
LISA E. RUBIN* (CA 317355)
101 California Street, 48th Floor
San Francisco, CA 94111
Telephone: 1(415) 856-7027
Facsimile: 1(415) 856-7100
*Not admitted to practice in the D.C. Circuit

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and D.C. Circuit Rule 26.1, *Amici Curiae* submit the following corporate disclosure statement: Investor Choice Advocates Network (ICAN) is a nonprofit, public interest firm working to expand access to markets by underrepresented investors and entrepreneurs.  ICAN has no parent corporation, and no publicly held company has a 10% or greater ownership in ICAN.

# TABLE OF CONTENTS

**Page(s)**

CORPORATE DISCLOSURE STATEMENT ................................................... I

INTERESTS OF *AMICI CURIAE* .................................................................. V

ARGUMENT ...................................................................................................... 1

I.     INTRODUCTION: THE SEC ORDER ARBITRARILY REDUCES INVESTOR CHOICES THROUGH MERIT-BASED REGULATION ................ 1

II.    APPROVING BITCOIN FUTURES ETPS BUT NOT A SPOT BITCOIN ETP IS ARBITRARY .......................................................................... 3

    A.    The Bitcoin Futures ETPs That the SEC Approved Are Near-Perfect Substitutes to the Spot-Market Bitcoin ETPs ................................. 3

    B.    Futures-Based Bitcoin ETPs Impose Higher Costs on Investors ................ 7

    C.    The Bitcoin Spot Market is Deeper and More Liquid than the Bitcoin Futures Market, Indicating That Large Trades May Be Executed With Minimal Effort .......................................................................... 9

    D.    The Trust's Bitcoin Index Provides Robust Investor Protection .............. 11

    E.    The Trust's Structure is More Transparent Than Futures-Based ETPs ..... 12

    F.    Preventing the Trust from Trading Ignores That the Trust is a Reporting Company Already Trading on a Marketplace .......................... 13

    G.    Permitting the Trust Would Yield Broad Market Benefits ....................... 14

III.   CONCLUSION .......................................................................................... 15

CERTIFICATE OF COMPLIANCE ............................................................... 16

CERTIFICATE OF SERVICE ......................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**STATUTES**

Investment Company Act of 1940 ..................................................................... 3

Securities Exchange Act of 1934 ............................................................... 3, 13

**RULES**

Federal Rules of Appellate Procedure 29(c)-(d) and 32(a)(7)(B)(i) ................................ 16

NYSE Arca Rule 8.201-E .................................................................................... 1

Federal Rules of Appellate Procedure Rule 29(b)(4) ........................................ 16

**REGULATIONS**

No. 34-95180, 87 Fed. Reg. 40299 (July 6, 2022) ............................................ 1

SEC Order Disapproving a Proposed Rule Change, as Modified by Amendment
No. 1 (March, 31, 2022) ................................................................................ 1

**LEGISLATIVE MATERIALS**

*Testimony Before the United States Senate Committee on Banking, Housing, and
Urban Affairs* (Sept. 15, 2022), available at:
https://www.sec.gov/news/testimony/gensler-testimony-housing-urban-affairs-
091522 ...................................................................................................... 1, 2

**OTHER AUTHORITIES**

*YCharts, GBTC Discount or Premium to NAV: -36.47% for Oct. 14, 2022* (Oct.
14, 2022) available at:
https://ycharts.com/companies/GBTC/discount_or_premium_to_nav (last
visited Oct. 17, 2022) ..................................................................................... 8

Angel, James, Letter to the U.S. Securities and Exchange Commission, *Order
Instituting Proceedings to Determine Whether to Approve or Disapprove a
Proposed Rule Change to List and Trade Shares of Grayscale Bitcoin Trust
(BTC) under NYSE Arca Rule 8.201-E* (April 17, 2022) ............................... 6

*Cryptocurrency benchmarks: frequently asked questions* (Oct. 6, 2022),
available at: https://www.cmegroup.com/articles/faqs/cme-cf-cryptocurrency-
benchmarks-faq.html ..................................................................................... 4

Goforth, Carol R., Letter to the U.S. Securities and Exchange Commission, *File No.: SR-NYSEArca-2021-90 Rel No.: 34-93504 Notice of Filing of Proposed Rule Change to List and Trade Shares of Grayscale Bitcoin Trust (BTC) under NYSE Arca Rule 8.201-E*, (May 3, 2022) ........................................................................ 2

Harvey, Campbell R., Letter to the Securities and Exchange Commission, *Comments on File No. SR-NYSEArca-2021-90*, (Mar. 26, 2022) (hereinafter, the "Harvey Letter") ........................................................................ 9

Hashem Dezhbakhsh, Narasimhan Jegadeesh, and Juan Rubio-Ramirez, Emory University, *Re: File No. SR-NYSEArca-2021-90* (Apr. 24, 2022) at p.2. (hereinafter, the "Dezhbakhsh, *et al*., Letter") ........................................................................ 9

Noble, David, *Letter to the* U.S. Securities and Exchange Commission, *File No.: SR-NYSEArca-2021-90* (Apr. 26, 2022) ........................................................................ 2

*To List and Trade Shares of the Winklevoss Bitcoin Trust, Securities Exchange Act Release No. 83723* (July 26, 2018), 83 FR 37579 (Aug. 1, 2018) ........................................................................ 13

Whaley, Robert E., Letter to the U.S. Securities and Exchange Commission, *Notice of Filing of Proposed Rule Change to List and Trade Shares of Grayscale Bitcoin Trust (BTC) under NYSE Arca Rule 8.201-E File No.: SR-NYSEArca-2021-90 Release No.: 34-93504* (May 25, 2022), at p. 1. (hereinafter, the "Whaley Letter") ........................................................................ 5

## INTERESTS OF *AMICI CURIAE*[1]

*Amici curiae* listed below are former regulators, law or finance professors and scholars who teach and write on corporate finance and financial economics and offer their expertise on the public policy issues presented in this case. *Amici* have an interest in ensuring that federal securities rules operate fairly and efficiently.[2] To that end, *Amici* write to urge the Court to return a holding that allows investors the freedom to make well-informed decisions about investment opportunities that offer investors the chance to grow, diversify and preserve their wealth, by approving Grayscale's bitcoin spot exchange-traded product ("ETP").

*Amici* also include the Investor Choice Advocates Network ("ICAN"), which is a nonprofit, public interest firm working to expand access to markets by underrepresented investors and entrepreneurs. *Amici* represent the interests of companies and individuals that invest in securities markets, that trade securities, and that provide services enabling trading. Their shared goal is efficient, fair, and transparent markets; that in turn depends on widespread distribution of and access to information, and investment options.

---

[1] All parties have consented to the filing of this brief. No party or party's counsel, and no person other than *amici*, their members, and their counsel, authored this brief in whole or in part or contributed money intended to fund preparing or submitting the brief.

[2] While not every *amicus* concurs entirely with every view expressed in this submission, all are in substantial agreement with the views expressed herein.

The *amici curiae* appearing in support of Petitioner are:

Investor Choice Advocates Network (ICAN)
ICAN is a nonprofit, public interest firm working to expand access to markets by underrepresented investors and entrepreneurs

James J. Angel
Associate Professor of Finance
McDonough School of Business
Georgetown University

Brian Brooks
Former U.S. Acting Comptroller of the Currency
CEO Bitfury Group

Hashem Dezhbakhsh
Chair and Goodrich C. White Professor
Department of Economics
Emory University

Carol Goforth
University Professor and Clayton N. Little Professor of Law
University of Arkansas

Joseph A. Grundfest
Former Commissioner, U.S. Securities and Exchange Commission
The William A. Franke Professor of Law and Business
Senior Faculty, Rock Center on Corporate Governance
Stanford Law School

Campbell R. Harvey
J. Paul Sticht Professor of International Business
The Fuqua School of Business
Duke University

Narasimhan Jegadeesh
Dean's Distinguished Chair of Finance
Goizueta Business School
Emory University

David Noble
Associate Professor In-Residence

Director of the Peter J. Werth Institute for
Entrepreneurship & Innovation Management
University of Connecticut

Harvey Pitt
Former Chair and General Counsel
U.S. Securities and Exchange Commission

Brian Quintenz
Former Commissioner
U.S. Commodity Futures Trading Commission

Juan Rubio-Ramirez
Charles Howard Candler Professor of Economics
Department of Economics
Emory University

Mark Wetjen
Former Commissioner
U.S. Commodity Futures Trading Commission
FTX US Head of Policy and Regulatory Strategy

Robert E. Whaley
Valere Blair Potter Professor of Management, and Director, Financial
Markets Research Center
The Owen Graduate School of Management
Vanderbilt University

# ARGUMENT

## I.  INTRODUCTION: THE SEC ORDER ARBITRARILY REDUCES INVESTOR CHOICES THROUGH MERIT-BASED REGULATION

As the Chair of Respondent Securities and Exchange Commission ("SEC" or "Commission") recently made clear in sworn testimony, the SEC is a disclosure-based regulator, and does not have the authority to engage in merit-based regulation.[3]

> For the last 90 years, our capital markets have relied on a basic bargain. Investors get to decide which risks to take, as long as companies provide full, fair, and truthful disclosures.  Congress tasked the SEC with overseeing this bargain.  We do so through a disclosure-based regime, not a merit-based one.

Contrary to the Chair's statement, on June 29, 2022, the Commission engaged in merit-based regulation when it arbitrarily denied the NYSE Arca Inc.'s (the "Exchange") application to list and trade shares of Grayscale Bitcoin Trust (the "Trust") as an exchange-traded product ("ETP"), despite having approved other economically equivalent ETPs presenting similar risks in our opinion.[4]

---

[3] Gensler, Gary, Chair, U.S. Securities and Exchange Commission, *Testimony Before the United States Senate Committee on Banking, Housing, and Urban Affairs* (Sept. 15, 2022), available at: https://www.sec.gov/news/testimony/gensler-testimony-housing-urban-affairs-091522.

[4] The SEC's June 29, 2022 final order titled Order Disapproving a Proposed Rule Change, as Modified by Amendment No. 1, to List and Trade Shares of Grayscale Bitcoin Trust Under NYSE Arca Rule 8.201-E (Commodity-Based Trust Shares), Release No. 34-95180, 87 Fed. Reg. 40299 (July 6, 2022).

A merits-based regulator has the ability to prohibit investors from exercising their own decisions and run the risk that the regulator's requirements are applied inappropriately.[5]  Congress explicitly precluded merits-based approach when establishing the SEC because it "wanted to 'avoid the implicit approval by the federal government of the merits of any securities offered for sale to the public.'"[6]

The investing public has clearly demonstrated its desire to invest in bitcoin. Responding to that demand, in October of 2021 and earlier this year, the SEC approved several futures-based bitcoin ETPs.[7]  Several bitcoin ETPs in jurisdictions with securities-law frameworks, including Canada and Europe, have begun trading the underlying bitcoin (not the futures) without issues.

Inherent in the goal of investor protection is investor choice: the freedom to make well-informed decisions about how best to invest capital among available opportunities.[8]  For reasons explained below, the SEC's order denying the Trust's ability to trade as an ETP on the Exchange should be vacated.

---

[5] Colombo, Ronald J. (2013) "Merit Regulation via the Suitability Rules," Journal of International Business and Law: Vol. 12: Iss. 1, Article 2.

[6] *Id.* at 4.

[7] Goforth, Carol R., Letter to the U.S. Securities and Exchange Commission, *File No.: SR-NYSEArca-2021-90 Rel No.: 34-93504 Notice of Filing of Proposed Rule Change to List and Trade Shares of Grayscale Bitcoin Trust (BTC) under NYSE Arca Rule 8.201-E*, (May 3, 2022), at pp. 1-2.

[8] Noble, David, Letter to the U.S. Securities and Exchange Commission, *File No.: SR-NYSEArca-2021-90*, (Apr. 26, 2022) at p. 1.

## II.    APPROVING BITCOIN FUTURES ETPS BUT NOT A SPOT BITCOIN ETP IS ARBITRARY

For the SEC to deny the Trust's ability to trade as an ETP on the Exchange ignores key similarities between futures and spot bitcoin ETPs.[9]  The Commission is discriminating between two investments that are near economic equivalents.

### A. The Bitcoin Futures ETPs That the SEC Approved Are Near-Perfect Substitutes to the Spot-Market Bitcoin ETPs

The physical-based ETP is substantially identical in its economic behavior to the previously approved futures-based ETP.  The SEC has approved one product that closely tracks the price of bitcoin, and appears to be arbitrary in rejecting a substantially identical product.

A comparison of the index underlying a futures-based ETP that the SEC permits to trade with the Index underlying the Trust demonstrates the point.  The Chicago Mercantile Exchange ("CME") is a commodities futures exchange in the United States, which trades futures contracts for all types of commodities, including bitcoin.  The CME CF Bitcoin Reference Rate ("Bitcoin Reference Rate") is the index used for settling the CME's futures-based bitcoin contract, which takes the price on various exchanges and averages those numbers to come

---

[9] In April of this year, the SEC also approved a futures-based ETP regulated under the Securities Exchange Act of 1934, undermining any argument that registration under the Investment Company Act of 1940 somehow confers an extra measure of reliability or trustworthiness.

up with a final settlement price for the contract.[10]  The averaging is intended to prevent manipulation of the closing price.  The Trust's bitcoin index is the CoinDesk Bitcoin Price Index (the "Index"), which is a U.S. dollar-denominated composite reference rate for the price of bitcoin designed to mitigate the effects of fraud, manipulation, and other anomalous trading activity from impacting the bitcoin reference rate.

Both the Index and Bitcoin Reference Rate are inextricably linked by arbitrage across spot bitcoin markets.  A way to assess this claim is by looking at the daily return distributions, and the way to characterize return distributions is by looking at their statistical properties (e.g., means, standard deviations, skewness) and their co-movement (e.g., correlation).  Daily index levels for the period beginning January 4, 2021 (about ten months before the launch of BITO)[11] through March 2022 (about six months after product launch) show that the Index[12] has a statistically-insignificant higher daily average return than Bitcoin Reference Rate[13] (0.0382% vs 0.0356%).  The Index has statistically and economically-insignificant

---

[10] *See* CME Group, *CME CF Cryptocurrency benchmarks: frequently asked questions* (Oct. 6, 2022), available at: https://www.cmegroup.com/articles/faqs/cme-cf-cryptocurrency-benchmarks-faq.html.

[11] BITO is a symbol for the ProShares Bitcoin Strategy ETF, which provides investors exposure to BTC futures contracts ("BITO"). It was the first Bitcoin ETF approved by the SEC in October of 2021.

[12] Referenced in the table below as "XBX."

[13] Referenced in table below as "BRR."

lower annualized standard deviation of return (i.e., "volatility") than Bitcoin

Reference Rate (79.3% vs. 80.3%).  The correlation is 0.983 as shown in the table

below.  **A perfect correlation is 1, and 0.983 is a near perfect correlation.**

| Table 1: Summary statistics | | |
|---|---|---|
| Description | XBX | BRR |
| $n$ | 338 | 338 |
| Mean (daily) | 0.000382 | 0.000356 |
| StDev (daily) | 0.050007 | 0.050593 |
| Skewness | -0.395406 | -0.273866 |
| Autocorrelation | -0.069047 | -0.061288 |
| Minimum | -0.259781 | -0.231823 |
| Median | -0.001246 | -0.001219 |
| Maximum | 0.165069 | 0.166328 |
| Mean (annual) | 9.63% | 8.96% |
| StDev (annual) | 79.38% | 80.31% |
| | | |
| Correlation | 0.983 | |

The Index and Bitcoin Reference Rate appear to be near-perfect substitutes.[14]

Both will move up and down in line with the price of bitcoin, which is what the investors

want.  The below chart shows the spot bitcoin from the Paxos exchange versus the soon

to expire BTC contract on the CME, both tracking the price of bitcoin:

---

[14] Whaley, Robert E., Letter to the U.S. Securities and Exchange Commission, *Notice of Filing of Proposed Rule Change to List and Trade Shares of Grayscale Bitcoin Trust (BTC) under NYSE Arca Rule 8.201-E File No.: SR-NYSEArca-2021-90 Release No.: 34-93504*, (May 25, 2022), at p. 1. (hereinafter, the "Whaley Letter").



The Commission's apparent approval of bitcoin Reference Rate and apparent disapproval of the Index (and the corresponding approval of trading BITO but not the Trust), both of which are based on volume-weighted prices and have overlapping constituent exchanges, does not appear to be based on a principled distinction.[15]

The spot and futures markets are so interconnected that any manipulations in the spot market affect the futures prices and vice versa.[16] The spot and futures markets are tied together through arbitrage. If the price in either market deviates from the other by more than a small amount, then arbitrageurs will step in to make a profit. They will buy whatever is low and sell whatever is high until the price discrepancy disappears. Any manipulation in either market will immediately affect the other market. It is not sensible to state that the futures market is immune to manipulation while the spot market is

---

[15] Whaley Letter at p. 1.

[16] Angel, James, Letter to the U.S. Securities and Exchange Commission, *Order Instituting Proceedings to Determine Whether to Approve or Disapprove a Proposed Rule Change to List and Trade Shares of Grayscale Bitcoin Trust (BTC) under NYSE Arca Rule 8.201-E* (April 17, 2022), at p. 5 (hereinafter, the "Angel Letter").

LEGAL_US_W # 113820807.8

vulnerable.  Accordingly, the SEC appears to be mistaken in its apparent belief that the bitcoin futures market is transparent and regulated but the spot bitcoin market is prone to manipulation.

In fact, the Trust has some technical advantages over a futures-based ETP.  If one defines manipulation as activity that moves a price away from its fundamental value, it is clear that the Trust will be less prone to manipulation.  This is because it will actually hold bitcoin and its creation and redemption will be in bitcoin.  The Trust can only be created by exchanging bitcoin for the ETP.  It does not matter what the price of bitcoin is at that time -- one bitcoin is one bitcoin; that cannot be manipulated.  The Trust will continue to represent the same amount of bitcoin.  As the Trust will be traded on SEC-regulated national securities exchanges just like BITO, its trading activity will be subject to the same high quality surveillance as BITO and the other stocks that trade on national securities exchanges.  Additionally, futures can differ from the actual prices for bitcoin, and futures-based ETPs are believed to be less profitable than those tracking the underlying asset itself.

## B. Futures-Based Bitcoin ETPs Impose Higher Costs on Investors

The SEC's rejection is causing harm to the Trust's investors, who are suffering from significant discounts to the actual price of bitcoin.  An investor who needs to sell their shares immediately would receive 36% less than the Net Asset Value ("NAV").  This discount would disappear if the SEC approves the Trust to be listed on the Exchange

as an ETP.  When applied to the $12 billion of assets in the Trust, that 36% represents a loss of $4.3 billion.[17]



Additionally, futures contracts are financial derivatives that oblige the buyer to purchase some underlying asset (or the seller to sell that asset) at a predetermined future price and date.  Once a futures contract expires, the investor would need to purchase another futures contract.  A bitcoin spot-ETP would not expire.  The spot-ETP is superior as this product gives direct exposure to real bitcoin, not bitcoin futures.

The adverse effect of the roll purchases required for futures-based bitcoin ETPs is higher costs imposed on investors that would not be imposed on investors in spot-bitcoin ETPs.  The bitcoin futures usually trade above their cost of carry level—a condition called contango.  This implies that the rate of return on a fully-collateralized futures position like that of BITO will be less than the return on the underlying asset as the

---

[17] YCharts, *GBTC Discount or Premium to NAV: -36.47% for Oct. 14, 2022*, (Oct. 14, 2022) available at: https://ycharts.com/companies/GBTC/discount_or_premium_to_nav (last visited Oct. 17, 2022).

futures price converges to the underlying asset price over time.  The steeper the futures price curve, the greater the return differential.  However, spot-based ETPs have no such roll costs because they hold the actual underlying asset.[18]  While futures-based bitcoin ETPs impose higher fees due to bitcoin futures premium and the cost of rolling future contracts each month, the spot-based bitcoin ETP provides investors with a structured investment vehicle with a lower cost.[19]  The SEC's current actions are leading to a huge discount on the Trust.

**C. The Bitcoin Spot Market is Deeper and More Liquid than the Bitcoin Futures Market, Indicating That Large Trades May Be Executed With Minimal Effort**

The veracity of markets can be assessed by their depth and liquidity.  Deep and liquid markets imply that large trades may be executed with a minimal effect on price.  A common way of measuring and comparing depth and liquidity is to look at the sizes of the markets and their trading volumes in dollars.  The evidence in the table below supports the position that the bitcoin spot market dominates the bitcoin futures market in its ability to absorb large trades.

---

[18] Harvey, Campbell R., Letter to the Securities and Exchange Commission, *Comments on File No. SR-NYSEArca-2021-90*, (Mar. 26, 2022) (hereinafter, the "Harvey Letter").

[19] Hashem Dezhbakhsh, Narasimhan Jegadeesh, and Juan Rubio-Ramirez, Emory University, *Re: File No. SR-NYSEArca-2021-90*, (Apr. 24, 2022) at p.2. (hereinafter, the "Dezhbakhsh, *et al*., Letter").

Investors in a spot-based bitcoin ETP would benefit from a much more liquid spot market[20] that does not exist in the bitcoin futures market, suggesting a higher potential of market manipulation in the futures market.[21]

Continuing with the comparison of the proposed Trust EFT for the spot market, and BITO for the futures market, shows that there is less liquidity and depth for the futures market. During the period January 4, 2021, through March 2022, the market cap in the bitcoin futures market averaged less than one-quarter of one percent of the bitcoin spot market. Since the Commission is comfortable with the viability of futures-based ETP investing in an environment in which the spot market dominates (in terms of both dollar value and trading volume), we believe that rejecting trading in spot-based ETPs is unjustified.





---

[20] At the time of the Order, the four spot bitcoin markets included in the Index were Coinbase Pro, Bitstamp, Kraken, and LMAX Digital, and the same remains true today. *See* https://tradeblock.com/markets/index/xbx (visited Oct. 11, 2022).
[21] Whaley Letter at p. 2.

## D. The Trust's Bitcoin Index Provides Robust Investor Protection

The Index is designed to (i) mitigate the effects of fraud, manipulation, and other anomalous trading activity from impacting the bitcoin reference rate, (ii) provide a real-time, volume-weighted fair value of bitcoin, and (iii) appropriately handle and adjust for non-market related events.[22]

The Index applies an algorithm to the 24-hour volume-weighted average price of bitcoin on the Constituent Exchanges[23] calculated on a per second basis. The Index's algorithm is expected to reflect a four-pronged method to calculate the Index Price from the Constituent Exchanges:

> Volume Weighting: Constituent Exchanges with greater liquidity receive a higher weighting in the Index Price, increasing the ability to execute against (i.e., replicate) the Index in the underlying spot markets.

> Price-Variance Weighting: The Index Price reflects data points that are discretely weighted in proportion to their variance from the rest of the other Constituent Exchanges. As the price at a particular exchange diverges from the prices at the rest of the Constituent Exchanges, its weight in the Index Price consequently decreases.

> Inactivity Adjustment: The Index Price algorithm penalizes stale activity from any given Constituent Exchange. When a Constituent Exchange does not have recent trading data, its weighting in the Index Price is gradually reduced until it is de-weighted entirely. Similarly, once trading activity at a

---

[22] Harvey Letter at p. 3.

[23] The spot bitcoin exchanges that are included in the Index (defined above) are selected by utilizing a methodology that is guided by the International Organization of Securities Commissions principles for financial benchmarks. For an exchange to become a spot bitcoin exchange included in the Index (a "Constituent Exchange"), it must satisfy certain criteria, including compliance with applicable licensing practices, publicly known ownership, no restrictions on deposits and/or withdrawals of bitcoin, and more.

Constituent Exchange resumes, the corresponding weighting for that Constituent Exchange is gradually increased until it reaches the appropriate level.

<u>Manipulation Resistance</u>: In order to mitigate the effects of wash trading and order book spoofing, the Index Price only includes executed trades in its calculation. Additionally, the Index Price only includes Constituent Exchanges that charge trading fees to its users in order to attach a real, quantifiable cost to any manipulation attempts.[24]

Furthermore, empirical evidence identifies a number of cases in which the Index's methodology has successfully-shielded the Index from anomalistic or manipulative pricing.[25]

### E. The Trust's Structure is More Transparent Than Futures-Based ETPs

Both futures-based bitcoin ETPs and spot-based bitcoin ETPs track the price of bitcoin.[26] The Trust price is linked to the price of bitcoin because it holds actual bitcoin. The conversion/redemption arbitrage process will ensure it. There is no equivalent claim that can be made for the futures-based bitcoin ETPs.

The Trust will be continuously exchangeable for bitcoin, which means that arbitrage activity will keep the price of the Trust pegged to the price of spot bitcoin. If the price of the Trust falls below the price of bitcoin, arbitrageurs will buy the lower cost Trust and exchange it for bitcoin (known as a redemption) and sell the bitcoin to realize a profit. Likewise, if the price of the Trust is above the price of bitcoin, the arbitrageurs will buy bitcoin, exchange it for the Trust (known as creation), and sell the Trust. This

---

[24] *Id.*
[25] Harvey Letter at p. 4.
[26] Whaley Letter at p. 3.

activity will continue until the price of the Trust is sufficiently close to the price of bitcoin that is not worthwhile to do the arbitrage.  This ability to do arbitrage is what keeps ETP prices pegged to the value of the underlying assets.

Purchasers of the proposed Trust would have a much clearer and accurate picture of what they are actually purchasing than purchasers of futures-based bitcoin ETPs.

### F. Preventing the Trust from Trading Ignores That the Trust is a Reporting Company Already Trading on a Marketplace

The SEC has repeatedly stated in its orders disapproving proposals to list shares of various spot bitcoin ETPs, that it has not found such proposals to be consistent with the Exchange Act, which requires that the rules of a national securities exchange be designed to prevent fraudulent and manipulative acts and practices to protect investors and the public interest.[27]  This ignores an important fact: the Trust is already available for trading on the OTCQX marketplace, the top tier of OTC Markets Group, Inc., by anyone with a brokerage account at a substantial discount to its net asset value.

Denying the ability of the Trust to trade does not prevent investors from exposure to bitcoin; it merely relegates investors to a less efficient form of exposure to bitcoin.

---

[27] *See*, among many other examples, Order Setting Aside Action by Delegated Authority and Disapproving a Proposed Rule Change, as Modified by Amendments No. 1 and 2, To List and Trade Shares of the Winklevoss Bitcoin Trust, Securities Exchange Act Release No. 83723 (July 26, 2018), 83 FR 37579 (Aug. 1, 2018) (SR-BatsBZX-2016-30).  Harvey Letter at p. 2, fn 7.

LEGAL_US_W # 113820807.8

## G. Permitting the Trust Would Yield Broad Market Benefits

Financial derivatives, including ETPs, can generally serve to enhance the liquidity and efficiency of the markets for many asset classes and currencies, including bitcoin. Price discovery, and in turn market efficiency, is sensitive to factors such as numbers of buyers and sellers, number of recent sales or purchases, current bids and offers, availability of capital, cost of execution, and cost, availability, and transparency of pricing information on trusted execution venues, amongst others. Approval of the Trust as a bona fide ETP on the Exchange would increase the number of market participants, dollar-denominated liquidity, and other competitive forces that would lead to more efficient price discovery than currently exists in a semi-fragmented, global bitcoin spot market that lacks a regulated, centralized trading venue or order book.[28] Moreover, the competition among spot-based and futures-based bitcoin ETPs may result in reduced ETP fees, benefiting investors. The SEC's arbitrary rejection of the conversion proposal prevents markets and market participants from enjoying these potential benefits.

By permitting the Trust to become a standard exchange-listed product, investors will enjoy the lower trading costs and deeper liquidity generally found on exchange-listed products, and the United States will better retain its competitive advantage in financial innovation and reduce investment opportunity migration to exchanges outside the United States.[29]

---

[28] Harvey Letter at p. 5.
[29] Angel Letter.

LEGAL_US_W # 113820807.8

## III. CONCLUSION

For the foregoing reasons, *Amici Curiae* respectfully request that the Court

vacate the Commission's order.

DATED:                          PAUL HASTINGS LLP
October 18, 2022

                                By: */s/ Stephen B. Kinnaird*

                                STEPHEN B. KINNAIRD, Bar # 454271
                                *stephenkinnaird@paulhastings.com*
                                2050 M Street NW
                                Washington, D.C., 20036
                                Telephone: 1(202) 551-1700
                                Facsimile: 1(202) 551-0242

                                NICOLAS MORGAN, Bar # 989861
                                ERIC SIBBITT* (CA 192413)
                                LISA E. RUBIN* (CA 317355)
                                *nicolasmorgan@paulhastings.com*
                                *ericsibbitt@paulhastings.com*
                                *lisarubin@paulhastings.com*
                                101 California Street, 48th Floor
                                San Francisco, California 94111
                                Telephone: 1(415) 856-7027
                                Facsimile: 1(415) 856-7100
                                *Not admitted to practice in the D.C. Circuit*
                                *Attorneys for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with Federal Rules of Appellate Procedure 29(c)-(d) and 32(a)(7)(B)(i).  The brief was prepared in Microsoft Word, using Times New Roman 14-point font.  According to the word count function, the word count, including footnotes and headings of the brief, is 2,574.

Dated: October 18, 2022

> By:  *<u>/s/ Stephen B. Kinnaird</u>*
> Stephen B. Kinnaird

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served copies of the foregoing **BRIEF FOR *AMICI CURIAE* IN SUPPORT OF PETITIONER** upon counsel listed in the Service Preference Report via email through the Court's CM/ECF system, and all counsel of record are registered users of CM/ECF for this case.

Dated this 18th day of October 2022.

By:  */s/ Stephen B. Kinnaird*
Stephen B. Kinnaird